UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| IRON WORKERS DISTRICT COUNCIL OF SOUTHERN OHIO & VICINITY ANNUITY TRUST, et al., | : : : : | Case No. 3:17-cv-00165 |
| | : | District Judge Walter H. Rice |
| Plaintiffs, | : : | Magistrate Judge Sharon L. Ovington |
| vs. | : : | |
| LARRY N. CARLIN, INC., et al., | : : | |
| Defendants. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I.     Introduction

Plaintiffs are three Trusts that are self-described (in the Complaint) as "employee benefit plans." (Doc. #1, *PageID* #1). They assert that the terms of three Trust Agreements impose a duty upon Defendants Larry N. Carlin, Inc. (LNC) and Carlin Construction, Inc. to allow an audit of Carlin Construction's payroll records. Each Defendant is an ERISA[2]-defined "employer," according to the Complaint. *Id*. at 4. Plaintiffs claim that Defendants' refusal to allow the audit violated the terms of the three Trust Agreements and ERISA, 29 U.S.C. § 1132(a)(3). Plaintiffs seek, in part, an Order

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

[2] ERISA is the seemingly ubiquitous acronym of the Employee Retirement Income Security Act of 1974 and its amendments.

requiring LNC to provide access to all the records it asked to examine in their audit requests.

The case is presently before the Court upon Defendants' Motion to Dismiss Plaintiffs' Complaint and/or Motion to Transfer Venue under 28 U.S.C. § 1404 (Doc. #8), Plaintiffs' Memorandum in Opposition (Doc. #13), Defendants' Reply (Doc. # 15), Plaintiff's Surreply (Doc. # 17), and the record as a whole.

## II.     Plaintiffs' Complaint

The Complaint identifies three Trust Agreements created by written agreements and trust declarations between various employers and "Participating Unions" affiliated with the International Association of Bridge, Structural and Ornamental Iron Workers, AFL-CIO. The Trusts are maintained and funded under the terms of one or more collective bargaining agreements (CBAs), including a CBA allegedly signed in March 1995 by LNC's President, Larry N. Carlin. The other party to this CBA, the Participating Union, is Iron Workers Local No. 147, Fort Wayne, Indiana. (Doc. #1, ¶s 15-16). Plaintiffs explain that they have attached a true and accurate copy of this CBA as Exhibit 4 to their Complaint.[3]  *Id*. at ¶16. More on this CBA later.

The three Plaintiff Trusts are described as the following three employee benefit plans: (1) Iron Workers District Council of Southern Ohio & Vicinity Benefit Trust

---

[3] Courts "treat copies of written instruments attached to a pleading as part of the pleading itself.  [Courts] may also consider documents that a defendant attaches to a motion if the documents are: (i) 'referred to in the plaintiff's complaint and are central to [the] claims' or (ii) 'matters of public record.'" *McLaughlin v. CNX Gas Co., LLC*, 639 F. App'x 296, 298–99 (6th Cir. 2016) (internal quotation marks and citations omitted); *see also Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999).

created to provided life insurance, accident and sickness benefits, hospitalization coverage, and medical/dental benefits for participating employees and their families (the Benefit Trust); (2) Iron Workers District Council of Southern Ohio & Vicinity Pension Trust created to provide pension, retirement, and death benefits for participating employees and their beneficiaries (the Pension Trust); and (3) Iron Workers District Council of Southern Ohio & Vicinity Annuity Trust created to provide annuity benefits for participating employees and their beneficiaries (the Annuity Trust).

The Complaint asserts that both Defendants LNC and Carlin Construction are "employers" under ERISA's definition, 29 U.S.C. §§ 1002(5), 1145, with their principal places of business in Indiana. Plaintiffs theorize that Carlin Construction is "an alter ego and/or joint employer with LNC and thereby is bound by the same agreements and has the same statutory obligations as LNC." (Doc. #1, *PageID* #4, ¶10; *see also* ¶s 44-53).

Returning to the CBA mentioned above, Plaintiffs state that its Article 41 contains an "evergreen clause" that remains in effect today. Article 41 provides, in Plaintiffs' view, that in the event the CBA expires without notice of termination by a party, it renews itself in one year increments, including any amendments.

Plaintiffs allege that this Local Union CBA requires both Defendants LNC and its alter ego Carlin Construction to submit contributions to them—the Iron Workers District Council of Southern Ohio & Vicinity Benefits, Pension, and Annuity Trusts. Plaintiffs assert, "LNC further evidenced its commitment to contribute to the Funds and to be bound to the Local Union CBA by signing and returning the Iron Workers Local No. 147 Wage & Fringe Package notice on February 17, 2015…." *Id*. at ¶20.

3

Apparently concerned that Defendants have unpaid contributions, Plaintiffs "hired an independent auditing firm to audit LNC's payroll records to ensure that LNC was complying with its contribution obligations…." *Id*. at ¶28. Plaintiffs took this action under the following audit-related language, which is present in the Benefit, Pension, and Annuity Trust Agreements:

> The Board of Trustees, or any authorized agent or representative of the Trustees, shall have the right at all reasonable times during business hours, to enter the premises of any Employer obligated to contribution to the Fund and to examine and copy such of the books, records, papers and reports of said Employer as may be necessary to determine the hours of work done and places where done by any Employees and to permit the Trustees to determine whether said Employer is making full payments to the Trustees of the amount required by the Collective Bargaining Agreement….

*Id*. at ¶ 27 (citations to the Trust Agreements omitted).

Plaintiffs asked the auditor "to seek the payroll documents for both LNC and Carlin Construction to confirm that all hours that were performed on behalf of LNC were properly reported and contributed upon as required." *Id*. at ¶29. Plaintiffs allege that LNC verbally agreed to give the auditor all the LNC payroll documents "but refused to provide any Carlin Con[struction] documents for the audit." *Id*. at ¶30.

Plaintiffs Complaint contains two Counts. Count I asserts, "LNC is bound to the Local Union CBA and the Trust Agreements." *Id*. at ¶34. It further asserts that LNC refuses to provide Plaintiff with the requested Carlin-Construction payroll documents. *Id*. at 35. Plaintiffs seek in Count I to enforce the terms of the Trust Agreements pursuant to ERISA, 29 U.S.C. § 1132(a)(3), "through the issuance of a declaratory order requiring LNC to comply with the Trusts' demands for a payroll audit." (Doc. #1, ¶40). Plaintiffs

4

also seek, among other things, an order requiring LNC to pay any unpaid contributions plus interest, etc. *Id*. at ¶41.

Count II of the Complaint maintains that Carlin Construction is jointly and severally liable for any unlawful action by LNC, including any violations of ERISA.

### III. Personal Jurisdiction

Defendants contend that this Court lacks personal jurisdiction over LNC or Carlin Construction. They argue that the Court lacks general jurisdiction over them because they do not have continuous and systematic contact with Ohio. They argue that specific jurisdiction is lacking here because they did not purposefully avail themselves of the privilege of conducting activities in Ohio. Defendants point out that they do not have an office, agent, or property in Ohio, and they have not reached into Ohio to conduct or solicit business. Defendants, however, aim their jurisdictional arguments in the wrong direction.

ERISA speaks to jurisdiction expansively:

> Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district court where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

29 U.S.C. § 1132(e)(2). This statute confers nationwide personal jurisdiction in ERISA cases. *Medical Mut. of Ohio v. deSoto*, 245 F.3d 561, 566 (6th Cir. 2001). Consequently, the required personal-jurisdiction analysis does ask whether the defendant had sufficient minimal contacts with the forum state "to comport with the traditional notions of fair play and substantial justice." *Id*. at 566-67. The analysis

instead asks whether a defendant has sufficient minimal contacts with the United States. *Id*. Because Defendants base their personal-jurisdiction arguments on their lack of minimum contacts with Ohio, rather than the United States, they have not demonstrated that this Court lacks personal jurisdiction over them. *See id*. Additionally, Defendants acknowledge that they are Indiana corporations, and as in *deSoto*, they "do not dispute that they reside within the United States and thus have meaningful ties with the forum rendering judgment." *Id*. at 567.

Accordingly, the Court has personal jurisdiction over Defendants in this case.

## IV. Failure to State a Plausible Claim

Defendants maintain that Plaintiffs' Complaint fails to state a plausible claim against them and should therefore be dismissed under Fed. R. Civ. P. 12(b)(6). Before reaching the merits of Defendants' Rule 12(b)(6) contentions, there is a preliminary wrinkle to iron out.

Plaintiffs argue that Defendants' 12(b)(6) Motion is untimely, and should therefore be dismissed, because Defendants filed it after they filed their Answer. Plaintiffs correctly recognize that a motion to dismiss for failure to state a claim upon which relief can be granted must be filed before a defendant files an answer. *See* Fed. R. Civ. P. 12(b); *see McGlone v. Bell*, 681 F.3d 718, 728 n.2 (6th Cir. 2012); *see also Lohner v. Lake Cnty., Tenn.,* No. 1:16cv02708, 2017 WL 3160569, at *2 (W.D. Tenn. 2017). This, however, is not fatal to Defendants' Motion.

A defendant may assert the failure to state a claim upon which relief can be granted in a motion for judgment on the pleadings under Rule 12(c). *See* Fed. R. Civ.

6

P. 12(h)(2)(B); *see also General Truck Drivers, Warehousemen, Helpers Sales & Service, Casino Employees, Teamsters Local Union No. 957 v. Heidelberg Distributing Co.*, No. 3:11cv00420, 2013 WL 831877, at *9 (S.D. Ohio 2013) (Rice, D.J.). The Court may therefore consider Defendants' 12(b)(6) Motion as a Motion for Judgment on the Pleadings under Rule 12(c) and proceed to the merits without further hiccup. *See, e.g., Heidelberg Distributing Co.*, No. 3:11cv00420, 2013 WL 831877, at *9. Or so it seems. Plaintiffs insist that proceeding under Rule 12(c) would be incorrect in the present case because Rule 12(c) itself directs that a party may not move for judgment on the pleadings until "after the pleadings are closed."

Plaintiffs overlook some practical realities. Dismissing Defendants' 12(b)(6) Motion, rather than accepting it as a Rule 12(c) Motion, would introduce unnecessary delay into this case because Defendants could simply re-file their Motion under Rule 12(c) after the pleadings are closed. At present, the deadline to amend the pleadings has expired and, consequently, requiring Defendants to jump through the procedural hoop of re-filing what would be a timely Motion under Rule 12(c) seems an absurd approach to case management. Additionally, requiring Defendants to re-file would unnecessarily increase the cost of this litigation. And, Rule 1—importuning the courts to "secure the just, speedy, and inexpensive determination of every action and proceeding"—cringes at the thought of creating the above problems by strictly imposing Rule 12(c)'s timing requirement. *Cf. Metropolitan Prop. & Cas. Ins. Co. v. Pest Doctor Systems, Inc.*, No. 3:14cv00143, 2014 WL 2855003, at *1 (S.D. Ohio 2014) (Rice, D.J.) ("In the interest of justice, the Court will construe the [untimely] motion to dismiss as a motion for judgment

7

on the pleadings, and proceed to render a decision."); *Little v. F.B.I.*, 793 F.Supp. 652, 653 (D.Md. 1992) ("the Rule 12(c) motion is treated as fungible with the Rule 12(b)(6) motion when the gravamen of the motion is a challenge to the legal sufficiency of the complaint).[4] For these reasons, proceeding under Rule 12(c) is warranted in the present circumstances.

Analyzing the merits of a Rule 12(c) Motion for Judgment on the Pleadings triggers the same standards that would apply under Rule 12(b)(6). *Fritz v. Charter Twp. of Comstock,* 592 F.3d 718, 722 (6th Cir.2010). "[A]ll well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* Doing so, the complaint must give notice to the defendant of its claims and "the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, *i.e.*, more than merely possible." *Id.* (quoting, in part, *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949-50 (2009)).

Defendants contend that the CBA attached as Exhibit 4 to the Complaint does not illustrate what Plaintiffs allege. Defendants contend that rather than being a copy of the current CBA (which, Defendants say, LNC did not sign), Exhibit 4 contains "an unnumbered signature page from the 1988-1996 CBA, signed by Larry Carlin in 1995. There is no nexus between the documents." (Doc. #8, *PageID* #179). Defendants further contend that Plaintiffs' automatic-renewal argument—*i.e.,* that LNC has been bound to

---

[4] Plaintiffs rely on *Nat'l Bankers Trust Corp. v. Peak Logistics LLC*, 2013 WL 3070843, at *2 (W.D. Tenn. 2013), which is not controlling in this court and is unpersuasive in the circumstances of this case.

8

the CBA because it automatically renews itself in one-year increments upon expiration unless a party terminates it—is "absurd on its face and is unsupported by the facts or 'evidence' attached to the Complaint." *Id*. at 180. Although Defendants correctly recognize that the court may not grant the present motion based on its disbelief of Plaintiffs' factual allegations, Defendants conclude that the Complaint fails to allege "'sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.'" *Id.* (quoting *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949).

Defendants' contentions fall apart because Plaintiffs have alleged that the CBA signed by Larry N. Carlin on March 7, 1995 contained an evergreen clause (in Article 41) "providing that after the Local Union CBA expires, without notice of termination by either party, the agreement renews itself in one-year increments, including any amendments agreed to between Iron Workers Local No. 147 and the relevant employer's association." (Doc. #1, ¶s 16-17). These allegations are accepted as true at this point in the case. *See Fritz,* 592 F.3d at 722. Defendants' challenge to Exhibit 4 does not alter these factual allegations because they essentially attack the authenticity of the copy of the CBA Plaintiffs have attached to the Complaint. This evidence-based argument does not eliminate Plaintiffs' allegations particularly when Larry N. Carlin's signature is under the phrase "FOR THE EMPLOYER 1988-1996" and the date the document indicates he signed is "3-7-95." *Id*., Exh. 4, *PageID* #100. To this extent, the document supports Plaintiffs' allegations and there is no direct contrary information in this document. The fact that

9

the document appears to lack a page number is simply too slender a reed to nullify Plaintiffs coinciding allegations in the Complaint.

The Complaint further alleges that the Participation Agreement binds LNC to them—the Benefit, Pension, and Annuity Trusts. Each Trust Agreement contains language that appears to support Plaintiffs' allegation that they have audit rights, which Defendants must respect. (Doc. #1, *PageID* #22, Section 4; *PageID* # 49, Section 5; *PageID* #s 68-69, Section 5). Consequently, even if it turns out the Larry N. Carlin did not sign the CBA as Plaintiffs allege, the Complaint sufficiently alleges LNC's duty to permits audits by the Trusts through the terms of the Participation Agreement, and the Trust Agreements.

Accordingly, Defendants are not entitled to dismissal or judgment on the pleadings.

## V. <u>Defendants' Motion to Transfer Venue</u>

Defendants contend that the Complaint should be dismissed for improper venue. Venue here is improper, they argue, because 29 U.S.C. § 1132(e)(2) permits the redress of ERISA violations in district courts where the plan is administered. Defendants state that they "are in the Northern District of Indiana, as is Local 147, its members and plan beneficiaries. Venue should not lie in Montgomery County, Ohio." (Doc. #8, *PageID* #179).

"An ERISA claim '[1] may be brought in the district where the plan is administered, [2] where the breach took place, or [3] where a defendant resides or may be

found.'" *Dull v. Energizer Personal Care, LLC*, No. 3:14cv195, 2015 WL 5308871, at *7 (S.D. Ohio, 2015) (Rose, D.J.) (quoting 29 U.S.C. § 1132(e)(2)).

Venue is proper in this District because Plaintiffs' Complaint alleges that their "principal place of operation and administration is located in the City of Vandalia, Montgomery County, Ohio." (Doc. #1, ¶12). Consequently, the Trusts—remember: Plaintiffs characterize themselves in the Complaint as "employee benefit plans" covered by ERISA—are administered within this District, making venue proper under 29 U.S.C. § 1132(e)(1). Although Defendants argue that the plans are administered in Indiana, the allegations in the Complaint control at this stage of the case and, consequently, Plaintiffs' allegation that Vandalia in their principal "place of … administration" establishes proper venue in this District, not Indiana.

Defendants also argue that venue is proper due to residence in the Northern District of Indiana. Venue might well be proper in Indiana based on Defendants' residence there. "A defendant 'resides or may be found,' for ERISA venue purposes, in any district in which its 'minimum contacts' would support the exercise of personal jurisdiction." *Moore v. Rohm & Haas Co.*, 446 F.3d 643, 646 (6th Cir. 2006). But, assuming Defendants reside in the Northern District of Indiana does not mean that venue is improper in this District. Section 1132(e)(2) is written in disjunctive language. It thus gave Plaintiffs a choice between three proper venues, one of which it turns out is this District. *See Oakley v. Remy Intern., Inc.*, No. 2:09cv0107, 2010 WL 503125, at *3 (M.D. Tenn. 2010); *see also Shanehchian v. Macy's, Inc.*, 251 F.R.D. 287, 289 (S.D.

Ohio 2008) (Spiegel, D.J.) ("ERISA action may be brought in the venue where any of three conditions is satisfied …").

Defendants contend that the Court should exercise its discretion under 28 U.S.C. § 1404(a) by transferring this case to the Northern District of Indiana, where it could have been initially brought because the locus of the parties' dispute, the key parties, and the location of the evidence all favor Indiana.

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought…." 28 U.S.C. § 1404(a). Various considerations apply: "the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moore*, 446 F.3d at 647 n.1 (citation omitted). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Reese v. CNH America LLC*, 574 F.3d 315, 320 (6th Cir. 2009) (internal quotation marks and citation omitted).

The fact that the Trusts are administered and maintained in Ohio carries with it the reasonable inferences that some key witnesses, including the Trusts' staff, are located in Ohio. At least some documents, such as the contribution reports Defendants submitted to Plaintiffs, are in Ohio. Plaintiffs state that the auditor is in Ohio. Most significantly, Plaintiffs chose to bring the case in this District. These factors favor keeping venue in this District.

Plaintiffs also maintain that Ohio law governs this case to the extent the Trust Agreements are not consistent with ERISA. Plaintiffs' first claim arises under ERISA, not Ohio law. Plaintiffs' second claim, asserting that Carlin Construction Inc. is LNC's alter ego might arise under Ohio law or might arise under federal common law that "draws upon state law for guidance…" in this area. *Flynn v. Pulaski Const. Co., Inc*., No. 02-02336, 2006 WL 47304, at *10 (D.D.C. 2006). The parties have not fully briefed this choice of law issue. Yet, it should be observed that the parties agreed in the Trust Agreement that Ohio and United States law, not Indiana law, govern the Agreements. *E.g.*, Doc. #1, *PageID* #51, Section 1. Consequently, the consideration that Ohio alter-ego law might apply to Plaintiff's second claim and the parties to the Trust Agreement chose Ohio (and federal) law, not Indiana law, favors keeping venue in this District.

Defendants offer several considerations that favor transferring venue to Northern Indiana. These include that both Defendants are in Indiana; the contract negotiations and subsequent CBA execution took place in Indiana; the work connected to the benefits contribution was performed on projects in Indiana; the employees and their beneficiaries reside in or near Fort Wayne, Indiana; and Local 147's business agent (Ron Starkey) is headquartered in Indiana.

Although Defendants offer valid considerations that favor a transfer to Indiana, Plaintiffs likewise offer valid considerations that favor keeping venue of this case in this District. In this situation, the considerations are close to being equally balanced. Consequently, Defendants' considerations do not strongly favor altering Plaintiff's choice of venue.

Accordingly, venue is proper in this District, and the case should not be transferred for the convenience of the parties and witnesses or the interest of justice.

## VI. Defendants' Reply Arguments

Defendants raise two issues in their Reply that they did not raise in their Motion to Dismiss: (1) LNC and Iron Workers Local 147 agreed to arbitrate any dispute over the terms of the contract and this is the exclusive remedy for contract disputes; (2) Plaintiffs failed to adhere to the National Labor Relations Act (NLRA), 29 US.C. §§ 1512-169, by not pursuing an "unfair labor practices" charge based on LNC's alleged failure to provide Carlin Construction information. (Doc. #15, *PageID* #s 268-70).

"'[I]t is well-established that a party cannot raise new issues in a reply brief….'" *Parillo v. New Werner Co.*, No. 3:14cv00369, 2014 WL 6879690, at *3 (S.D. Ohio 2014) (Rose, D.J.) (citations omitted). Although Plaintiffs filed a Sur-Reply (with leave of Court) addressing Defendants' new issues, this does not remove Defendants' mistaken inclusion of their new issues for the first time in their Reply. It is therefore proper to reject Defendants' new issues at this point in the case.

In addition, Defendants do not cite a single ERISA case supporting their theory that enforcement of a CBA's arbitration clause is warranted in light of claims similar to those raised by Plaintiffs in this case. The one case Defendants do cite is *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009). The parties in *Pyett* disagreed over "whether a provision in a collective-bargaining agreement that clearly and unmistakably requires union members to arbitrate claims arising under the Age Discrimination in Employment Act…, is enforceable." *Id*. at 251. The answer was yes. Given that the present case

14

arises under ERISA, is between three Plaintiff Trusts and two employers, and concerns the terms of several Trust Agreements, *Pyett*, is readily distinguished.

As to Defendants' reliance on the NLRA, "[P]ursuant to 29 U.S.C. §1132(e), United States district courts have exclusive jurisdiction to hear civil actions brought by a fiduciary under § 1132(a)(3) seeking to enforce an employer's obligations to contribute to an ERISA fund." *Orrand v. Hunt Construction Group, Inc.*, 193 F.Supp.3d 854, 859 (S.D. Ohio, 2016) (Graham, D.J.). It is therefore dubious at best for Defendants to transform Plaintiffs' ERISA enforcement claim into a claim governed by the NLRA.

Accordingly, the new issues Defendants advance in their Reply brief lack merit.

### IT IS THEREFORE RECOMMENDED THAT:

Defendants' Motion to Dismiss Plaintiffs' Complaint and/or Motion to Transfer Venue under 28 U.S.C. § 1404 (Doc. #8) be DENIED.

October 17, 2017  *s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).